UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Monica and Daniel O'Connor,<br><br>Plaintiffs,<br><br>v.<br><br>New York Collateral Recovery Corporation and<br>New York Municipal Credit Union,<br><br>Defendants. | **COMPLAINT**<br>1:17-cv-<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This is an action for money damages and declaratory judgment, brought by two individual consumers, for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), the New York Uniform Commercial Code, the New York General Business Law, and New York common law.

2.     This action concerns illegal and abusive repossession and collection practices by defendant New York Collateral Recovery Corporation ("Collateral Recovery Corp.") and related deceptive and fraudulent business practices by defendant New York Municipal Credit Union ("NYMCU").

3.     After agreeing with NYMCU to bring their car payments up to date, and after making the required payment pursuant to that agreement, Collateral Recovery Corp. nonetheless proceeded, on NYMCU's behalf, to unlawfully to repossess Plaintiffs' Vehicle.  Collateral Recovery Corp.'s repossession was brazenly improper, unfair and unconscionable and neither NYMCU nor Collateral Recovery had any right to possession of the seized property at the time of the repossession.

4.      Moreover, as set forth herein, Defendants have engaged in numerous additional deceptive, abusive and fraudulent business practices directly harming Plaintiffs.  For example, after unlawfully repossessing the Vehicle and NYMCU told Plaintiffs that it would not release the Vehicle unless Mrs. O'Connor agreed to direct deposit of her salary into her NYMCU account.  Not only was this new condition unlawful but NYMCU refused to release the Vehicle even after Plaintiffs agreed to its demand.

5.      Plaintiffs have been without access to their Vehicle for five months at the time of this filing.

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred by l5 U.S.C. § l692k(d) and 28 U.S.C. § 1331. This court also has supplemental jurisdiction of the state law claims asserted herein under 28 U.S.C. § 1367(a).

7.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue in this district is proper because the defendants are both headquartered in this District and the acts and the transactions that give rise to this action occurred, in substantial part, in this district.  28 U.S.C. §§ 1391b(1), (2).

## PARTIES

9.      Plaintiff Monica O'Connor is a natural person who resides in South Salem, New York.

10.     Plaintiff Daniel O'Connor is a natural person who resides in South Salem, New York.

11.     Plaintiffs are each a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

12.     Defendant Collateral Recovery Corp. is a towing and repossession company located in the Bronx, New York.

13.     Collateral Recovery Corp.'s principal purpose is the enforcement of security interests, to wit the repossession of automobiles.  Collateral Recovery Corp. is therefore a "debt collector" as

defined in the FDCPA, 15 U.S.C. § 1692a(6).

14.     Defendant NYMCU is a credit union headquartered in New York, New York.

## FACTS

15.     On or about August 28, 2016, Plaintiffs received a loan from NYMCU to purchase a 2011 Porsche Cayenne (the "Vehicle").

16.     Shortly thereafter, Plaintiffs fell approximately three weeks behind on their monthly installment payment of $788 per month.

### Plaintiffs Made Their Required Payment

17.     In or about November 2016, Plaintiffs and NYMCU reached an agreement pursuant to which Plaintiffs would make the missing monthly payment of $788 and the O'Connors would no longer be in default on the loan, and the Vehicle would not be repossessed.

18.     Plaintiffs made the $788 payment to NYMCU on the morning of November 19, 2016.

19.     Later in the afternoon on November 19, 2016, Tashiem Mayo of NYMCU emailed Plaintiffs informing them:

> Your money gram was received today for $788 reference # 92209552. I put in the request to cancel the repossession claim on your account today, but received notice this cannot be done until Monday morning.

20.     Thereafter, despite NYMCU's receipt of the payment, Mr. Mayo informed Plaintiffs by phone that NYMCU had failed timely to contact the repossession company, Defendant Collateral Recovery Corp., to halt the repossession.

21.     NYMCU then advised Plaintiffs by phone to hide the Vehicle from Collateral Recovery Corp. because Collateral Recovery Corp. would proceed to repossess the Vehicle, notwithstanding Plaintiffs payment of the agreed upon amount.

22.     NYMCU's suggestion to Plaintiffs that they "hide" the Vehicle to avoid repossession by

- 3 -

Collateral Recovery Corp. constitutes an admission that the repossession ought not to have occurred in light of Plaintiffs' November 19, 2016 payment.

### The Vehicle Was Repossessed Despite Plaintiffs' Payment

23. Collateral Recovery Corp. repossessed the Vehicle at approximately 2 AM on November, 21, 2016, even though Plaintiffs had made the required payment to NYMCU.

24. At the time of Collateral Recovery Corp.'s repossession, neither Collateral Recovery Corp. nor NYMCU had any right to the Vehicle pursuant to an enforceable security interest.

25. Specifically, NYMCU had agreed not to repossess the Vehicle as long as Plaintiffs came current by making the $788 payment.

### NYMCU Engaged in Egregious Post-Repossession Misrepresentations and Deceptions

26. Following the unlawful repossession, Plaintiffs called NYMCU to request return of the Vehicle.

27. Unable to reach anyone by phone, Plaintiffs emailed Mr. Mayo on November 22, 2016 asking what they could do to obtain return of the Vehicle.

28. Plaintiffs wrote to Mr. Mayo:

> NY collateral recovery says to get the car back we have to go through mcu not them directly.  I don't understand why any of this is happening after the bill was already paid and collected.  It doesn't make sense to have to pay recovery fees or towing fees etc while my mcu account is currently paid up to date.  Now I'll have to miss days of work among other inconveniences that really shouldn't have happened at all.

29. Plaintiffs further stated in writing, "The proof of insurance was emailed to you as well . . . there aren't any lapses or unpaid geico bills at all."

30. Mr. Mayo responded by email stating that, "Per Management," Plaintiffs would need to make the November payment, provide "new proof of income (last 3 paystubs)," and "the loan has to be set up on payroll deduction at the branch."  Mr. Mayo noted that he "already received

the proof of insurance and forward it to auditing for approval [*sic*]."

31. The representations in Mr. Mayo's email contradicted the agreement between Plaintiffs and NYMCU, pursuant to which Plaintiffs had already made the required back payment of $788.

32. Specifically, nothing in the parties' agreement permitted NYMCU to demand early payment of the November monthly installment as a condition of releasing the car, nor had the parties agreed on any requirement of additional proof of income or that the loan be set upon "on payroll deduction at the branch."

33. NYMCU's efforts to add terms after they had already agreed to remove Plaintiffs' loan from default constitutes a breach of its prior agreement with Plaintiffs.

34. Mr. O'Connor then corresponded in writing with John Paparelli of NYMCU, inquiring, "Can you tell me the address where the car is and what the price is?" Mr. O'Connor noted, referring to his reliance on the Vehicle to get to work, "I can't afford to miss another week of work."

35. Mr. O'Connor informed Mr. Paparelli that Collateral Collection Corp. demanded $920 in fees before the Vehicle could be picked up, which he could not afford in addition to the car payments they were making.

36. Mr. O'Connor further stated that he should not be forced to pay repossession fees because the repossession was improper.

37. Mr. Paparelli informed Mr. O'Connor that he could not help with the repossession fees.

38. Plaintiffs were informed by Mr. Mayo, on or about approximately November 22, 2016, by phone and email that, to obtain return of the Vehicle, they would need to pay "repossessory fees" to the repo facility, provide further proof of employment and include to verify their ability to continue paying, and enroll in a payroll deduction as an added assurance that they would

honor their monthly payment obligations.

39. On or about November 22, 2016, by phone, an NYMCU representatives told Monica O'Connor that if she switched the direct deposit of her salary to her NYMCU account, the Vehicle would be released and returned to the O'Connors' possession.

40. Mrs. O'Connor did in fact switch the direct deposit of her salary.

41. After that time, payments for the car loan were automatically deducted from Mrs. O'Connor's account on a bi-weekly basis.

42. The car payments were, at this point, completely up to date.

43. Nonetheless, the Vehicle was not returned because Plaintiffs were unable to pay the bogus "repossession fees", and therefore have not been permitted to retrieve the Vehicle for some five months (and counting) following repossession.

44. Instead, NYMCU auto-deducted payments from the O'Connors' account as if to satisfy a car loan – even though the Vehicle had been repossessed.

45. Moreover, NYMCU imposed restraints against withdrawal of money from the O'Connors' account – even though the Vehicle had been repossessed.

<u>NYMCU Threatens To Auction The Vehicle</u>

46. Then, on January 27, 2017, Plaintiffs were told by NYMCU over the phone that the Vehicle would be sold at auction.

47. Plaintiffs were stunned because the car payments were up to date in light of their payments and the automatic deductions from Mrs. O'Connor's account.

48. On a January 28, 2017 phone call, a representative of NYMCU informed the O'Connors again that they could only reclaim the Vehicle upon paying various auction fees totaling over $1,500.

49. The representative then instructed Mrs. O'Connor to apply for another loan from NYMCU at one of their branches to get the money to pay the repossession fees.

50. Acting on these instructions, Mrs. O'Connor visited an NYMCU branch office on West 125th Street in New York, New York and met with Mr. Willie Kearse, a customer account representative.

51. Mrs. O'Connor filled out forms provided by Mr. Kearse.

52. Mr. Kearse then told Mrs. O'Connor that it "did not make sense" for her to apply for a loan.

53. Mr. Kearse informed Mrs. O'Connor that she should instead write a letter to the CEO of NYMCU demanding that NYMCU cover the repossession fees, as the repossession should not have occurred.

54. Mr. Kearse stated repeatedly that the Vehicle should not have been repossessed.

55. Mrs. O'Connor proceeded to make the loan application as she had been instructed to on the phone. Specifically, Mrs. O'Connor sought to borrow $2,500 to cover repossession fees and the costs of a rental car while the Vehicle was unavailable.

56. The loan application was denied on January 30, 2017.

57. On February 7, 2017, Plaintiffs spoke with a representative of NYMCU by telephone.

58. On this February 7 phone call, Mrs. O'Connor said that she did what was asked of her by NYMCU by applying for the loan and was denied. The representative said that he "tried to do it on my side" but "it was a long shot" and there were not "any guarantees" that the loan would be approved.

59. Mrs. O'Connor reminded the representative that she had made payments before the November 21 repossession.

60.    The agent responded by stating that he "remembered the situation as it happened," but said that the situation was "beyond" his "abilities" to address.

61.    Mrs. O'Connor told the representative that she should have listened to him and hid the Vehicle (as he had stated to her on two separate ocassions.  The representative responded, "I don't know . . . I can't tell people what to do.  I can't really say what to do.  I just remember the situation."

62.    The representative asked if the Vehicle had been repossessed.  Mrs. O'Connor responded that it had been.  The representative then said apologetically that he was powerless to call off the repossession over a weekend "because that's the policy."

63.    On February 7, 2017, and consistent with previous phone conversations, a representative of NYMCU emailed Mrs. O'Connor a list of fees – totaling $1,770 – that must be paid before the Vehicle would be returned.

64.    These fees including a "Repo Fee" of $395 and "Repo Handling" for $100 – even though the repossession of the Vehicle was, as set forth herein, unlawful.  NYMCU's payment demand further included $1,275 in "Auction fees," including a "key fee" ($395), "transport" ($185), "Agent storage" ($660), and "Redemption" ($35).

Plaintiffs' Counsel Corresponds With NYMCU

65.    On February 16, 2017, the undersigned's law firm wrote to NYMCU demanding release of the Vehicle.

66.    NYMCU responded by letter dated February 23, 2017.

67.    NYMCU's February 23, 2017 response conceded:

      i.    that the O'Connors and NYMCU had agreed with regard to the catch-up payment (i.e. making the missing $788 payment);

      ii.      That the O'Connors made the payment;

      iii.     That the Vehicle was nonetheless repossessed the following day at NYMCU's direction.

      iv.     That the O'Connors were told that they needed to pay repossession fees before being able to reclaim the Vehicle.

68. Nonetheless, NYMCU's February 23 letter defends the propriety of the demand that the O'Connors pay for the costs of the improper repossession because, the February 23 letter contends, the O'Connors had "fail[ed] to make their first payment on the Loan and allow[ed] the insurance coverage to lapse, rais[ing] the specter that they were unreliable borrowers."

69. As to NYMCU's first point, that the O'Connors had failed to make their first payment, this has no bearing on repossession because NYMCU had already agreed not to repossess the Vehicle if the O'Connors made the missing payment, which they did.

70. As to NYMCU's second contention, regarding insurance coverage for the Vehicle, NYMCU's assertion is flatly false. Indeed, the O'Connor's mailed the proper insurance work to NYMCU at their request on November 22, 2017, as previously stated.

71. Moreover, neither of these proffered explanations, nor the O'Connor's supposed "specter" as "unreliable borrowers" could, as NYMCU claims in the February 23 letter, provide reason to compel the O'Connors to pay over $1,500 to cover the costs of an unlawful and improper repossession.

72. On April 13, 2017, NYMCU sent the O'Connor's an email stating "that your Auto Loan with the Municipal Credit Union is now 45 days delinquent and is being reviewed for possible repossession."

73. Of course, NYMCU had already repossessed the O'Connor's car months prior to sending

this email.

74. Plaintiffs have suffered substantial out-of-pocket injuries as a result of Defendants' conduct, including: lost wages because they could not make it to their jobs without the Vehicle; lost wages because they took time off work to visit Collateral Recovery Corp.'s premises; the costs of taxis between Collateral Recovery Corp.'s lot on City Island in the Bronx and the O'Connors' home in South Salem; attorneys' fees (including, *inter alia*, attempts to obtain release of the Vehicle prior to litigation); and harm to their credit.

75. Plaintiffs have also experienced compensable aggravation, anxiety, nervousness, emotional distress, fear, loss of concentration, indignation, and pain and suffering.

## FIRST CAUSE OF ACTION
**Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.**
(**Against Collateral Recovery Corp. Only**)

76. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

77. By undertaking the above referenced collection activities, Defendant Collateral Recovery Corp. violated 15 U.S.C. § 1692 *et seq*.

78. Specifically, and without limitation, Defendant Collateral Recovery Corp. violated § 1692(6), which provides in relevant part as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:. . .
>
> (**6**)Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
> (**A**)
> there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> . . .
> (**C**)
> the property is exempt by law from such dispossession or disablement.

79. As a result of Defendant Collateral Recovery Corp.'s FDCPA violations, Plaintiffs have

- 10 -

suffered actual damages, including but not limited to:

- loss of their real property;
- costs of renting a car while the Vehicle was impounded;
- missed days of work because the Vehicle was not available for transportation;
- taxis between Collateral Recovery Corp. in the Bronx and Plaintiffs' home in South Salem;
- damage to credit; and
- aggravation, anxiety, nervousness, emotional distress, fear, loss of concentration, indignation, and pain and suffering.

80. As a result of these violations, Plaintiffs are entitled to statutory damages of $1,000, actual damages, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF ARTICLE 9 OF THE NEW YORK UNIFORM COMMERCIAL CODE

81. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

82. The subject transaction, including Defendants' repossession and sale of the Vehicle and its attempt to hold Plaintiffs liable for any related fees and/or deficiency, are subject to Article 9 of the New York's Uniform Commercial Code.

83. Defendants violated Article 9 by failing to provide any of the required notices in connection with its repossession and sale of the Vehicle, either before or after the repossession. To wit, and without limitation, NYMCU has provided none of the notifications required pursuant to NYUCC § 9-611 through 9-614 and § 9-616;

84. Because the required notices were not provided at all, they were also not provided timely. To wit, their provision was neither within the statutorily required times (see, e.g. NYUCC § 9-611; New York General Obligations Law § 7-401);

85. To the extent it was entitled to the collateral at all -- which it was not), Defendants failed to dispose of the collateral within the time limitations set forth in NYUCC § 9-620(f)

86. Plaintiff is therefore entitled, e.g. pursuant to NYUCC § 9-625, actual damages, statutory damages, costs, release of the collateral, and attorney's fees.

### THIRD CAUSE OF ACTION
### NYGBL § 349 (DECEPTIVE ACTS AND PRACTICES UNLAWFUL)

87. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

88. Defendant NYMCU's acts and practices set forth above, also constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

89. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

90. Each of these actions was consumer oriented and involved misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

91. Specifically, upon information and belief, NYMCU has a policy of repossessing vehicles to which it has no right of repossession due to its supposed inability to cancel a scheduled repossession on a weekend even if a borrower is no longer in default.

92. NYMCU's practices are deceptive because they encourage borrowers to make payments, only to find that their vehicles will still be repossessed.

93. Moreover, as happened here, on information and belief NYMCU routinely informs customers that their repossessed vehicles will be released if they have their pay checks automatically deposited into NYMCU accounts when there is no basis for any such requirement and does not release the vehicles even after the automatic deposits are set up unless additional fees are paid and other unreasonable conditions met.

94. Defendants' conduct and statements were materially misleading.

95. As a result of these violations of NYGBL §349, Plaintiff Plaintiffs have suffered actual damages, including but not limited to:

- loss of their real property;
- costs of renting a car while the Vehicle was impounded;
- missed days of work because the Vehicle was not available for transportation;
- taxis between Collateral Recovery Corp. in the Bronx and Plaintiffs' home in South Salem;
- damage to credit;
- aggravation, anxiety, nervousness, emotional distress, fear, loss of concentration, indignation, and pain and suffering.

96. As a result of these violations, Plaintiffs are entitled to statutory damages of up to $1,000, actual damages, and attorneys' fees and costs.

97. Upon information and belief, Defendants' violations were willful and knowing and committed in bad faith.

98. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' practices are deceptive as defined under § 349, and injunctive relief, including an order enjoining auction or other disposition of the Vehicle and compelling its return to Plaintiffs, and also enjoining Defendants from undertaking in New York any of the various deceptive practices set forth herein going forward.

## FIFTH CAUSE OF ACTION
## FRAUD

99. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

100. Defendants fraudulently induced Plaintiffs to pay $788 on November 19, 2016, only to repossess their Vehicle the next day notwithstanding the payment.

101. Plaintiffs justifiably relied NYMCU's misrepresentations of material facts, as a result of which they sustained losses and damages.

102. Specifically, had Plaintiffs not been misled by NYMCU, they would never would have agreed to pay $788 on November 19, 2017.

103. Moreover, had Plaintiffs not been mislead by NYMCU, they never would have agreed either to apply for a $2,500 loan in January 2017 or to set up automatic deposits of Mrs. O'Connor's pay check into an NYMCU account.

104. As a result of Plaintiffs reasonable reliance upon NYMCU's misrepresentations, they have been damaged in an amount to be determined at trial and are entitled to actual and punitive damages, attorneys' fees, and costs and expenses.

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

105. Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

106.    Moreover, on or around November 14, 2016, Plaintiffs entered into an enforceable agreement with NYMCU pursuant to which Plaintiffs made the required $788 payment in order to remove their loan from default status and avoid repossession.

107.    Defendants nonetheless proceeded to repossess the Vehicle in breach of the agreement, thereby harming Plaintiffs in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION
### CONVERSION

108.    Plaintiffs repeat and re-allege and incorporates by reference the foregoing paragraphs.

109.    Since November 21, 2016, Defendants have intentionally and without authority or good faith claim to right, has exercised control over Plaintiffs' personal property by having the Vehicle towed from the street and stored in a secure facility in such a way as to prevent Plaintiffs from the possession, use and enjoyment of their car, by effecting what Defendants purport to be a repossession of the Vehicle.

110.    Defendants actions were taken with the malicious intent to deprive Plaintiffs of the possession, use and enjoyment of their property.

111.    The malicious and intentional taking of the vehicle resulted from NYMCU's refusal to honor its agreement with Plaintiffs.

112.    Plaintiffs had an absolute possessory right to the Vehicle.

113.    Defendants had a duty to Plaintiffs not to interfere with her right to possession of the Vehicle.

114.    Defendants control over the vehicle and their interference with it are in derogation or exclusion of Plaintiffs' rights.

115.    As a direct and proximate result of Defendants malicious and intentional taking of the Vehicle and their refusal to return it absent receipt of moneys to which they are legally not

entitled, Plaintiff has suffered actual damages including but not limited to the loss of the Vehicle and the other actual damages set forth in Defendants' FDCPA and GBL Section 349 causes of action.

116.  Defendants actions to repossess vehicles for non-payment without a present right of possession and its wrongful refusal to release vehicles without additional payments to which they are not entitled by law is part of a larger policy and practice, as set forth in Plaintiffs' First through Sixth Causes of Action.

117.  Accordingly, Defendants are liable to Plaintiffs for their conversion of the Vehicle for actual damages, punitive damages – in an amount sufficient to punish Defendants for their intentional and malicious repossession and to prevent Defendants from perpetrating the harm on other consumers, attorneys' fees, costs, and expenses, and an Order from the Court compelling Defendants to release the Vehicle and seek no further payments in connection with the repossession.

**WHEREFORE,** plaintiff respectfully requests that this Court award:

(a)  Declaratory Judgment that Defendant's conduct violated the laws cited herein;
(b)  Injunctive relief;
(c)  Actual damages;
(d)  Statutory damages;
(e)  Treble Damages;
(f)  Punitive damages;
(g)  Costs and reasonable attorney's fees; and
(h)  Such other and further relief as law or equity may provide.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:   April 20, 2017

- 17 -

            Respectfully Submitted,

            */s/Daniel A. Schlanger*
            Daniel A. Schlanger, Esq.
            Kakalec & Schlanger, LLP
            85 Broad Street, 18th Floor
            New York, NY 10004
            T: 212.500.6114
            F: 646.612.7996
            dschlanger@kakalec-schlanger.com